### RAYMOND SYNDICATE v. BROWN.

(Circuit Court, D. New Hampshire. June 26, 1903.)

#### No. 2,328.

1. SPECIFIC PERFORMANCE—EQUITY JURISDICTION—CONTRACT PARTIALLY EXE-
CUTED.

A bill which alleges the purchase by complainant from defendant of an entire stock of general merchandise for a lump sum of $20,000, which was paid; that defendant has delivered about two-thirds of the goods, but refuses to deliver the remainder, and has concealed the same so that complainant cannot obtain possession of them by an action of replevin—states, on demurrer, a cause of action, within the jurisdiction of equity to grant relief by a decree for specific performance, on account of the peculiar circumstances of a purchase for a lump sum, a completion of title of the whole purchase in the purchaser, and his inability to replevy the goods not delivered.

In Equity. On demurrer to bill.

Sargent, Niles & Morrill, for complainant.
Eastman & Hollis and H. J. Brown, for defendant.

PUTNAM, Circuit Judge (orally). We think it is for the interest of both parties that this case should be disposed of now at the close of the arguments of counsel. Whatever our action may be, it is subject to review by the Circuit Court of Appeals, and, in view of the peculiar character of the property involved, the sooner the case is advanced so as to come under the hand of the court the better.

This case comes before us on a demurrer to a bill in equity. The substantial question made is that complainant's remedy is at law, and not in equity. The bill alleges a contract made on the 6th day of October, 1902, and it was filed on the 30th day of January, 1903. The intervening period was so short that, although in a controversy of this character a lack of very prompt action amounts to laches in

equity, yet no specific objection is made on that account. The substance of the case as made by the bill is that the business of the complainant consists in buying entire stocks in trade of persons retiring from mercantile business, and disposing of the same at bargain sales; that the profits derived from such sales are due in large part to the fact that the complainant is able to advertise the placing on sale of an entire stock in trade of an established and reputable mercantile house among people locally acquainted with the facts; that it is essential to the profitable conducting of such sales that the complainant should have possession of the entire stock thus purchased; that in the ordinary course of its business, and for the purposes stated, it purchased of the respondent, as the executor of the will of James S. Butler, the entire stock in trade owned by Butler in his lifetime, consisting of miscellaneous merchandise; that it paid for the same $20,-000, which purchase price was received by the respondent as such executor; that the respondent delivered to the complainant about $14,000 worth of the stock in question, and refuses to deliver the balance, and has concealed it; that in consequence thereof it is impossible for the complainant to replevy the merchandise not delivered to it, or in any way to obtain possession of it; that under the circumstances it is impossible for the complainant to ascertain such a description thereof, or of the amount of the same, as to furnish a basis of value in an action at law for damages; that it would not on any terms have purchased any part of the stock or less than the whole; that, in substance, the retention by the respondent of a portion thereof defeats entirely the purpose of the complainant in making the purchase; and that consequently it has no efficient remedy except by a bill for specific performance to enable it to complete the purchase, and secure delivery of the merchandise not delivered as above.

This makes a very peculiar case, for which no precedent has been cited by the counsel on either side. We do not regard the allegations with reference to the business of the complainant rendering it desirable that it should have this entire stock of goods, or the allegations with reference to any loss of profits which would come to it if it did not have the entire stock of goods, as furnishing the basis for a proceeding in equity. The matters which those allegations involve are too speculative and too remote for that purpose. Those are not the kind of uses which are referred to in the authorities as justifying the interposition of a court of equity to enforce a contract with reference to the delivery of personal property. The uses thus referred to as peculiar are such as appertain to heirlooms, family portraits, special machinery designed for a special mill, materials of a peculiar character which cannot be otherwise obtained, and other things of a like class. We cannot regard anything in these allegations sufficient to justify equitable interposition.

Of course, it is necessary for the complainant, whatever might be the peculiarity of the personal property involved, to show that it is secreted in such way that it could not be replevined. The bill sufficiently shows that fact. It is also necessary for the complainant to show that damages cannot be estimated in a suit at common law. But the mere fact that there might be a difference of opinion as to

124 F.—6

what the damages ought to be, the mere fact that one jury might estimate them one way and another jury another, and the mere fact that the uncertainty exists as to damages which frequently exists in litigation, are not at all within the trend of the authorities on questions of this character. The case of Watson v. Sutherland, 5 Wall. 74, 18 L. Ed. 580, illustrates what is meant. The court says that the tort there committed, unless restrained, would have resulted in a general breaking up of the complainant's business. For this the law not only furnished no specific rule of damages, but no damages whatsoever. It is in that direction that expressions as to the inadequacy or uncertainty of damages trend, and not towards any question of damages raised on the face of this bill. Ordinarily, there could be no question of damages with reference to the retention of articles of common merchandise, such as this suit relates to, which would bring a case within the expressions to which we have referred. Neither is this case with Watson v. Sutherland, because there the injury for which the common law furnished no remedy was direct, while here, as we have said, it is remote and speculative. Therefore there is nothing in the cases which justify us in maintaining this bill in this aspect.

The only thing which appeals to us is the fact that this bill relates to a lump sale of a general stock of miscellaneous merchandise for $20,000. The entire consideration was paid, but the vendor delivered about two-thirds of the stock, and has refused to deliver the rest. This impresses us in two different ways: First of all, equity exercises a favorite jurisdiction when it compels the completion of what has been partly done. When a transaction has been partly completed, and then arrested in mid-air, the common law fails to give any rule which secures a satisfactory adjustment of the transaction through litigation. It is ordinarily impossible to break off a continuous transaction of importance, and leave parties a reasonable remedy in the mere matter of damages. Therefore it is that equity is prone to compel the completion of what has been partly done. In this case the reason of this rule is very well illustrated. Here is a stock of miscellaneous merchandise of large value, sold in lump. A part has been delivered, and a part withheld and secreted, so that it cannot be replevined. It is impossible to formulate any rule or even conjecture by which it can be told how the parties, as among themselves in making up the lump sum of $20,000, estimated the part that remains behind. Independently of this, it would be quite impracticable, in the nature of things, to determine justly the proportionate value of a part of a broken stock of goods of this character which had been sold in lump. This fact alone would not justify an equity court in taking jurisdiction, but it illustrates why it is that equity ordinarily takes jurisdiction to compel the completion of what is partly done. Indeed, according to the well-settled maxims of equity, what is agreed to be done and is partly done is regarded as done, and all the court does is to complete in form what in theory is already completed. In Hart v. Hart, 18 Ch. D. 670, 685, Mr. Justice Kay said: "When an agreement for valuable consideration between two parties has been partially performed, the court ought to do its utmost to carry out that agreement by a decree for specific performance." In this par-

ticular case this rule is especially emphasized, because, the sale being in lump, full payment having been made, and the chattels purchased partly delivered, the title to the remainder, both legally and in equity, has vested in the complainant. Therefore the complainant is only seeking to assert its title to chattels in the possession of the respondent to which it is legally entitled specifically, and which, the same being secreted, it cannot obtain by any process at common law. Of course, as we have already said in another connection, this fact alone would not justify a chancellor in taking jurisdiction, but it emphasizes the propriety and justice of exercising in this particular case the peculiar equitable jurisdiction of which we have spoken. Therefore, on this ground, and on this ground alone, although no precedent is produced, we deem it just and proper, and within the limitations governing courts in equity, to retain jurisdiction of this bill.

We wish, however, to say that all through this argument there has run an undercurrent of thought which we do not preclude ourselves from pursuing further on a final hearing. It is often quite unsatisfactory to undertake to dispose of a bill on a demurrer, because the court may often see that the probability is that the record does not fully present the case as it really is. Therefore it is impossible for us at the present time to determine whether, under the peculiar circumstances, the remedy in equity will, as a matter of fact in this particular case, prove more efficient than that at law. We can perceive that, if the bill had been defaulted immediately on its being filed, the relief might have been in all respects effective; but, looking at the ordinary course of proceedings in chancery, it is a question, and a serious one, which we cannot dispose of ultimately on this demurrer, whether equity can, in fact, in this particular case, give any relief which is efficient. In this respect we stand somewhat as the Supreme Court stood in Kansas v. Colorado, 185 U. S. 125, 22 Sup. Ct. 552, 46 L. Ed. 921, where it refused on demurrer to consider the most material questions which the bill involved, but overruled the demurrer, and sent the parties to the issues of fact. On the other hand, the ordinary rule is that jurisdiction depends on the status when a bill is filed. Busch v. Jones, 184 U. S. 598, 599, 22 Sup. Ct. 511, 46 L. Ed. 707. In any view, so far as the case now stands, we must let it rest unqualifiedly on the demurrer.

Demurrer overruled; bill adjudged sufficient in law; defendant to answer on or before the August rules.